IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs August 1, 2017

## RANDY A. RICE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-12-43          Kyle Atkins, Judge**

_____

**No. W2016-02592-CCA-R3-PC**

_____

Petitioner, Randy A. Rice, appeals the denial of his petition seeking post-conviction relief from his convictions for felony murder and facilitation of especially aggravated robbery. Petitioner argues that he received ineffective assistance of both trial and appellate counsel. Upon our review of the record, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Michael Thorne, Lexington, Tennessee (on appeal), and John D. Hamilton, Jackson, Tennessee (at hearing), for the appellant, Randy Antonio Rice.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Jody S. Pickens, District Attorney General; and Al Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural Background*

Over thirteen years ago, Petitioner participated in the killing of the victim, David Martin. *See State v. Randy Antonio Rice*, No. W2010-00146-CCA-R3-CD, 2011 WL 3556973 (Tenn. Crim. App. Aug. 9, 2011), *perm. app. denied* (Tenn. Dec. 13, 2011). In 2004, the victim was discovered in his home deceased from four gunshot wounds, and his wallet was missing. Several years later, investigators received information regarding

Petitioner's involvement in the victim's death from Cory Bowers, a childhood friend of Petitioner. Mr. Bowers was serving a federal sentence on drug charges after being set up by Petitioner's brother and was seeking a reduction of his sentence in exchange for his cooperation. According to Mr. Bowers, Petitioner had twice approached him and discussed robbing the victim, and each time Mr. Bowers declined. A few days later, Petitioner, accompanied by another childhood friend, Jessie Rodgers, told Mr. Bowers that he had stolen the victim's money and had shot the victim after a struggle.

Petitioner consistently denied his involvement through multiple interrogations until November 13, 2007, when he made a statement to Lieutenant Jeff Fitzgerald admitting his involvement. According to Petitioner's statement, he, his brother, and Mr. Rodgers planned the robbery of the victim. Petitioner's role was essentially that of a getaway driver while Mr. Rodgers went into the victim's house to rob him. When Mr. Rodgers exited the house bleeding, he told Petitioner that the victim threw something that hit him in the eye and that he shot the victim during a struggle over a gun. Petitioner stated that Mr. Rodgers took $80 from the victim, of which Petitioner and his brother each received $20. Petitioner was eventually indicted for premeditated first degree murder, felony murder, and especially aggravated robbery.

Prior to trial, Petitioner filed a motion to suppress his November 13 statement on the ground that Petitioner's right to counsel was violated. At the suppression hearing, Lieutenant Fitzgerald testified that while Petitioner was waiting to be arraigned in General Sessions Court, Petitioner motioned Lieutenant Fitzgerald over to him. Petitioner told Lieutenant Fitzgerald that they needed to talk, but Lieutenant Fitzgerald told him that they would have to wait until after the General Sessions judge was done with Petitioner. During the arraignment, the Public Defender was appointed to represent Petitioner. Afterward, Petitioner again motioned to Lieutenant Fitzgerald, who asked if Petitioner still wanted to talk. Petitioner said that he did, so Lieutenant Fitzgerald took Petitioner to his office. Lieutenant Fitzgerald read Petitioner the *Miranda* warnings and clarified that Petitioner initiated the contact; Petitioner waived his rights and agreed that he had contacted Lieutenant Fitzgerald. Lieutenant Fitzgerald recorded the statement and produced a written statement, which Petitioner read and initialed each paragraph before signing. Lieutenant Fitzgerald admitted that he did not consult with the Public Defender's Office before conducting the interview. Sergeant Felicia Stacy confirmed that Petitioner beckoned Lieutenant Fitzgerald over prior to arraignment, and she was present during the subsequent statement. The trial court found that Petitioner initiated contact with Lieutenant Fitzgerald prior to arraignment and that, afterward, Lieutenant Fitzgerald "followed through" with Petitioner's earlier request to talk. The court found that Petitioner made a knowing and voluntary waiver of his right to counsel and denied the motion to suppress.

At trial, the State relied heavily on the testimony of Mr. Bowers and Petitioner's November 13 statement to Lieutenant Fitzgerald. During deliberations, the jury submitted two questions regarding their consideration of lesser-included offenses for the charge of premeditated first degree murder; the State moved to nolle that charge. Thereafter, the jury convicted Petitioner of felony murder and the lesser-included offense of facilitation of especially aggravated robbery. The trial court imposed consecutive sentences of life and twelve years' imprisonment. On appeal, this Court held that the evidence was sufficient to sustain both convictions and that the trial court did not abuse its discretion in ordering the sentences to run consecutively. *See Randy Antonio Rice*, 2011 WL 3556973, at \*6, \*8.

On February 21, 2012, Petitioner filed a timely pro se petition for post-conviction relief, alleging multiple grounds of ineffective assistance of counsel. Post-conviction counsel was appointed, and an amended petition was filed on August 22, 2016.[1] As relevant to this appeal, Petitioner alleged that he received ineffective assistance of counsel when trial counsel failed to request a jury instruction on corroboration of accomplice testimony with regard to Mr. Bowers; when trial counsel failed to move for a judgment of acquittal on the felony murder charge after the jury found him guilty of facilitation of especially aggravated robbery; and when appellate counsel failed to raise the denial of the motion to suppress Petitioner's statement as an issue on appeal.[2] An evidentiary hearing was held on September 9, 2016.

At the hearing, Petitioner testified that trial counsel should have argued at the motion to suppress hearing that the interrogation of Petitioner should have ceased after he requested and was appointed an attorney. Petitioner denied that he initiated contact with the investigators either before or after his arraignment on November 13, 2007. According to Petitioner, "I was moving around like don't touch me, but I - - that ain't no body sign to tell nobody to come talk to me." Petitioner testified that Lieutenant Fitzgerald had interrogated him six times after his arrest on November 9, 2007, before he made his statement on November 13, 2007. According to Petitioner, this included a statement on November 12, wherein he requested an attorney; however, the State never produced the November 12 statement either at trial or during the post-conviction proceedings. Petitioner testified that Lieutenant Fitzgerald was present during the arraignment when counsel was appointed and would have known that Petitioner was represented by an attorney; however, Lieutenant Fitzgerald made no attempt to inform that attorney that he was about to take a statement from Petitioner. Petitioner stated that

---

[1] The delay in this case was caused in large part by the appointment and withdrawal of multiple post-conviction attorneys.

[2] Issues raised in the petition but not raised on appeal are deemed abandoned. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at \*6 n.2 (Tenn. Crim. App. Oct. 26, 2009), *perm. app. denied* (Tenn. Apr. 16, 2010).

he never had a chance to speak to his appointed attorney until almost two weeks after the arraignment. Petitioner also faulted trial counsel for failing to investigate Petitioner's mental health issues, including paranoid schizophrenia, and their effect on Petitioner's confession. Petitioner faulted appellate counsel for failing to raise the suppression issue on appeal, even after appellate counsel moved to supplement the appellate record with the transcript of the suppression hearing.

As to the jury instruction issue, Petitioner testified that the jury should have been instructed that Mr. Bowers was an accomplice and that his testimony had to be corroborated. According to Petitioner, without his November 13 statement, there was insufficient evidence to corroborate Mr. Bowers's testimony. Petitioner claimed that the statements made by Mr. Bowers to investigators "come up missing" and were not produced in discovery. Petitioner believed that the statements could have been used to impeach Mr. Bowers on cross-examination. Petitioner testified that he believed that trial counsel should have moved for acquittal on the felony murder charge because the jury found him guilty of facilitation of especially aggravated robbery, which does not contain the intent element required for felony murder.

On cross-examination, Petitioner admitted that his mental health issues did not affect his ability to understand and participate in either the trial or post-conviction hearing. Petitioner admitted that trial counsel had him evaluated for competency to stand trial. Petitioner admitted signing a *Miranda* rights waiver form prior to making the November 13 statement and that his mental health issues did not affect his ability to understand his rights. Petitioner admitted that he did not request an attorney on November 13 but maintained that he did so on November 12. Petitioner continued to deny that he initiated contact with Lieutenant Fitzgerald on November 13. As to whether Mr. Bowers was an accomplice, counsel for the State pointed out that Mr. Bowers denied any involvement during his trial testimony and that Petitioner's statement did not implicate him. Petitioner maintained that he never received any pre-trial statements made by Mr. Bowers and that the jury should have been able to decide whether he was an accomplice.

Trial counsel testified that he has practiced law since 1989 and that approximately sixty-five percent of his practice involves criminal law, including hundreds of trials at both the state and federal level. Trial counsel was retained to represent Petitioner and filed a motion to suppress the November 13 statement on his behalf. Trial counsel testified that the issue they were trying to raise was whether law enforcement were "even capable of getting into that questioning of [Petitioner], whether he says 'I waive' or not, without at least informing his attorney that they were going to do so." Trial counsel testified that he was not involved in Petitioner's direct appeal and would have to defer to appellate counsel as to whether the suppression issue should have been raised. Trial

- 4 -

counsel never saw a statement given by Petitioner on November 12 but recalled that the State was not allowed to introduce at trial a number of earlier, self-serving statements.

On cross-examination, trial counsel testified that he received open-file discovery from the State and that he reviewed the discovery with Petitioner. Trial counsel agreed that the only testimony presented at the suppression hearing was that of law enforcement; therefore, the only evidence before the trial court was that Petitioner initiated contact with law enforcement, and the trial court ruled accordingly. Trial counsel testified that Petitioner never mentioned any concerns that his mental health could have affected the voluntariness of his statement.

Appellate counsel testified that he has been a licensed attorney practicing out of Humphreys County since 1983 and that he often contracted with the Public Defender's Conference to handle appeals. Appellate counsel recalled looking into the suppression issue in this case "very thoroughly." Appellate counsel requested two continuances during the appeal in order to review the suppression hearing and research the issue. Appellate counsel recalled the suppression issue being "well-argued on both sides" and there being "a pretty specific ruling by the trial judge, which seemed to be very consistent with the law about the way those sorts of statements could be taken." In appellate counsel's opinion, "[t]here just wasn't much that you could successfully appeal on that." Appellate counsel admitted that he could have raised the suppression issue regardless; however, based on his experience, appellate counsel believed that he would be more successful if he focused on the strongest appellate issues rather than including every conceivable issue. In this case, appellate counsel believed that the strongest argument was with regard to the imposition of consecutive sentences, and he made a tactical decision to focus on that and sufficiency of the evidence. On cross-examination, appellate counsel testified that he believed the chance of success in appealing the suppression issue "was almost nonexistent[, a]nd it would probably focus the interest to the Court of Criminal Appeals' panel away from what [he] thought was the best issue for [Petitioner]."

At the conclusion of the hearing, the post-conviction court ruled from the bench denying the petition. The post-conviction court found that both trial counsel and appellate counsel were credible witnesses. The post-conviction court found that Petitioner failed to prove any deficiency on the part of either counsel or that he suffered prejudice as a result. The post-conviction court entered a written order to that effect on November 29, 2016. Petitioner filed a timely notice of appeal.

*Analysis*

On appeal, Petitioner argues that he received ineffective assistance of counsel when trial counsel failed to request a jury instruction on corroboration of accomplice

testimony with regard to Mr. Bowers; when trial counsel failed to move for a judgment of acquittal on the felony murder charge after the jury found him guilty of facilitation of especially aggravated robbery; and when appellate counsel failed to raise the denial of the motion to suppress Petitioner's statement as an issue on appeal. The State responds that Petitioner has not proven either deficient performance or resulting prejudice with regard to either counsel.

## *I. Standard of Review*

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998).

On appeal, this Court will review the post-conviction court's findings of fact "under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). This Court will not re-weigh or re-evaluate the evidence presented or substitute our own inferences for those drawn by the trial court. *Id.* at 456. Questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *Id.* However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Id.* at 458.

## *II. Ineffective Assistance of Counsel*

Both the Sixth Amendment to the Constitution of the United States and Article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal

cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580. "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

*III. Trial Counsel*

Petitioner argues that trial counsel provided ineffective assistance when he failed to request a jury instruction on corroboration of accomplice testimony with regard to the testimony of witness Mr. Bowers. It is well-settled that "a conviction may not be based solely upon the uncorroborated testimony of an accomplice to the offense." *State v. Bane*, 57 S.W.3d 411, 419 (Tenn. 2001). "An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in the commission of a crime." *State v. Allen*, 976 S.W.2d 661, 666 (Tenn. Crim. App. 1997). The test for whether a witness qualifies as an accomplice is whether he or she could be indicted for the same offense charged against the defendant. *See State v. Jones*, 450 S.W.3d 866, 888

(Tenn. 2014). In this case, Mr. Bowers testified at trial that Petitioner twice approached him and discussed robbing the victim, and both times Mr. Bowers refused to help. "One cannot be deemed an accomplice merely because []he knew of the intention of the accused to commit a crime." *Gant v. State*, 466 S.W.2d 518, 521 (Tenn. Crim. App. 1969); *see also State v. Lawson*, 794 S.W.2d 363, 369 (Tenn. Crim. App. 1990) (stating that an accomplice is more than someone who merely "has guilty knowledge or is morally delinquent, or who was even an admitted participant in a distinct but related offense"). In fact, Petitioner's own statement did not implicate Mr. Bowers in planning the robbery, committing the robbery, or sharing in the proceeds from the robbery. Petitioner has produced no evidence that would support a finding that Mr. Bowers was an accomplice. Thus, trial counsel was not ineffective in failing to request a jury instruction that was not supported by the evidence. *See State v. Marthias S. Phillips and Lanard Keith Armstrong*, No. M2000-02575-CCA-R3-CD, 2002 WL 31202125, at \*9 (Tenn. Crim. App. Sept. 27, 2002) (finding counsel did not provide deficient representation when no evidence linked witness to crime other than "his own testimony that he was present during discussions about the planning and commission of the crimes but did not participate in those discussions"), *perm. app. denied* (Tenn. Jan. 27, 2003).

Petitioner also argues that trial counsel provided ineffective assistance by failing to move for a judgment of acquittal on the charge of felony murder when the jury returned a verdict on the lesser-included offense of facilitation of especially aggravated robbery. Felony murder is the "killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery." T.C.A. § 39-13-202(a)(2). The only culpable mental state required is "the intent to commit the enumerated offenses or acts." T.C.A. § 39-13-202(b). Though originally charged with especially aggravated robbery, Petitioner was convicted of the lesser-included offense of facilitation. "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403(a). According to Petitioner, "[b]ecause the jury concluded the Petitioner did not have the intent required for the robbery, he should not have been convicted of the felony murder because he lacked the intent to commit the underlying felony." However, a defendant is not entitled to relief from a felony murder conviction simply because he is acquitted of the underlying felony. *See State v. Davis*, 466 S.W.3d 49, 72 (Tenn. 2015). "This Court will not upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned." *Wiggins v. State*, 498 S.W.2d 92, 94 (Tenn. 1973). This Court considered the sufficiency of the evidence on direct appeal and concluded that the proof supported both of Petitioner's convictions. *See Randy Antonio Rice*, 2011 WL 3556973, at \*6 (citing *State v. Quartes Williams*, No. W2008-01946-CCA-R3-CD, 2009 WL 2971046, at \*11 (Tenn. Crim. App. Sept. 14, 2009), *perm. app. denied* (Tenn. Feb. 22, 2010)). Therefore, trial counsel did not render

deficient performance by failing to move for a judgment of acquittal on the basis of inconsistent verdicts.

## IV. Appellate Counsel

Petitioner contends that appellate counsel was ineffective for failing to raise the denial of the motion to suppress his November 13 statement as an issue on direct appeal. Petitioner argues that his statement should have been suppressed because he unequivocally invoked his right to counsel. According to Petitioner, "appellate counsel decided not to pursue this issue despite evidence in the record that law enforcement initiated contact with the Petitioner following the appointment of counsel." The State responds that appellate counsel made a sound strategic decision to forgo the issue "after fully considering the facts and the law."

A criminal defendant is entitled to the effective assistance of counsel on direct appeal. *See Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995) (citing *Evitts v. Lucey*, 469 U.S. 387 (1985)). Like claims of ineffective assistance of trial counsel, claims of ineffective assistance of appellate counsel are subject to the *Strickland* standard set forth above. *Id*. In other words, a petitioner must establish both that appellate counsel was deficient for failing to raise or preserve an issue on appeal and that there was a reasonable probability that had the issue been properly raised, it "would have affected the result of the appeal." *Id*. at 597. However, an attorney is "not constitutionally required to raise every conceivable issue on appeal." *Carpenter v. State*, 126 S.W.3d 879, 887 (Tenn. 2004) (citations omitted). It is appellate counsel's responsibility to determine the issues to present on appeal. *State v. Matson*, 729 S.W.2d 281, 282 (Tenn. Crim. App. 1986) (citing *State v. Swanson*, 680 S.W.2d 487, 491 (Tenn. Crim. App. 1984)). Appellate counsel's determination of which issues to raise on appeal are strategic decisions "within appellate counsel's sound discretion" and "should be given considerable deference." *Carpenter*, 126 S.W.3d at 887. Ultimately, the petitioner must establish that the issue had some merit; otherwise, counsel's failure to raise it would not have been deficient and the petitioner would have suffered no prejudice. *Id*.

In this case, appellate counsel testified that he made a strategic decision not to raise the suppression issue after "very thoroughly" considering the facts and the law. This Court's records show that appellate counsel moved to supplement the record with a transcript of the suppression hearing and sought multiple continuances, which appellate counsel explained were for the purpose of conducting research on the suppression issue. Appellate counsel testified that based on his research and the trial court's detailed findings, he did not believe that this Court would find that the issue had merit. Appellate counsel made the strategic decision to focus on what he believed to be the strongest appellate issue. These types of "'strategic choices made after thorough investigation of

law and facts relevant to plausible options are virtually unchallengeable.'" *Felts v. State*, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 690-91).

Moreover, Petitioner has not shown that the issue had any merit. The only evidence that Petitioner did not initiate contact with law enforcement was his testimony at the post-conviction hearing, which would not have been available to appellate counsel. Additionally, Petitioner agreed that Lieutenant Fitzgerald read the *Miranda* warnings to him, that he understood them, and that he waived his rights before making his statement. The law is clear that even after a defendant has been appointed an attorney, he may make a knowing waiver of his right to counsel. *See Montejo v. Louisiana*, 556 U.S. 778, 786 (2009) ("Our precedents also place beyond doubt that the Sixth Amendment right to counsel may be waived by a defendant, so long as relinquishment of the right is voluntary, knowing, and intelligent. The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled.") (internal citations omitted); *see also State v. Willis*, 496 S.W.3d 653, 714-15 (Tenn. 2016); *State v. March*, 395 S.W.3d 738, 767-71 (Tenn. Crim. App. 2011). Whether Petitioner invoked his right to counsel during the missing November 12 statement would likewise have no bearing on his ability to waive his right to counsel on November 13. *See State v. Cauthern*, 778 S.W.2d 39, 46 (Tenn. 1989) ("The U.S. Supreme Court has clearly sanctioned the admissibility of a statement given after the appointment of counsel and even after defendant has 'expressed his desire to deal with police only through counsel,' where defendant initiates further communication, electing 'to face the state's officers and go it alone,' and knowingly and intelligently waives his Sixth Amendment right to counsel.") (quoting *Patterson v. Illinois*, 487 U.S. 285 (1988); *Edwards v. Arizona*, 451 U.S. 477 (1981)). Because Petitioner has not shown that the suppression issue had any merit, appellate counsel was not ineffective for failing to raise it on direct appeal.

*Conclusion*

Based on the foregoing, we affirm the judgment of the post-conviction court.


_____
TIMOTHY L. EASTER, JUDGE